

**FILED**

**JUN 2 8 2018**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **SD Miss. Civil Action No. 3:18-cv-252-CWR-FKB** |
| **Plaintiff,** | |
| **v.** | **1:18-cv-04510**<br>**Judge Virginia M. Kendall**<br>**Magistrate Judge Young B. Kim** |
| **ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC** | |

## NOTICE OF RECEIVERSHIP PURSUANT TO 28 U.S.C. §754 AND
## REQUEST FOR THE ISSUANCE OF A MISCELLANEOUS CASE NUMBER

Pursuant to 28 U.S.C. § 754,[24] Alysson L. Mills, the appointed Receiver in *Security and Exchange Commission v. Arthur Lamar Adams, et al.*, Southern District of Mississippi, Case No. 3:18-cv-00252-CWR-FKB, submits the attached Complaint, Exhibit 1, and Order Appointing Receiver, Exhibit 2, for filing in this Honorable Court as a miscellaneous action.

The Receiver respectfully requests that this Honorable Court assign a miscellaneous action number to this matter and file the Complaint and Order Appointing Receiver accordingly.

---

[24] 28 U.S.C. § 754 provides, "Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located."

1337532v.1

DATED:  June 27, 2018

Respectfully Submitted,

*/s/ Jason W. Burge*

Brent B. Barriere, LA Bar No. 2818
Jason W. Burge, LA Bar No. 30420
FISHMAN HAYGOOD, LLP
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Telephone:  (504) 586-5252
bbarriere@fishmanhaygood.com
jburge@fishmanhaygood.com

*Counsel for Alysson L. Mills, appointed Receiver in* Security and Exchange Commission v. Arthur Lamar Adams, et al., *Southern District of Mississippi, Case No. 3:18-cv-00252-CWR-FKB*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

               **Plaintiff,**

               **v.**

**ARTHUR LAMAR ADAMS AND
MADISON TIMBER PROPERTIES, LLC,**

               **Defendants,**

Case No. 3:18-cv-252-OPJ-FKB

**JURY DEMAND**

FILED
APR 20 2018
ARTHUR JOHNSTON
BY_____ DEPUTY

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), files its complaint and alleges that:

## SUMMARY

1.     Beginning in approximately 2004, Defendant Arthur Lamar Adams ("Adams"), through his wholly-owned company, Madison Timber Properties, LLC ("MT Properties"), committed securities fraud by operating a Ponzi scheme. Adams and MT Properties have raised at least $85 million from over 150 investors in multiple states.

2.     Adams told investors that their money would be used by MT Properties to acquire timber-harvesting rights from various land owners on behalf of investors.  The company allegedly would later harvest the timber and pay investors with the profits.  In fact, Adams operated the venture as a Ponzi scheme, paying earlier investors with funds obtained from newer investors.  He also used invested funds for a variety of inappropriate ends, including personal expenses and to fund real estate investments.

3.     By the conduct detailed in this Complaint, Adams and MT Properties violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.  Unless enjoined, Adams and MT Properties are likely to commit such violations again in the future.

4.     The Commission seeks a judgment from the Court: (a) freezing defendants' assets pending final adjudication of the Commission's claims; (b) finding that Adams and MT Properties violated the antifraud provisions of the federal securities laws; (c) enjoining Adams and MT Properties from engaging in future violations of the antifraud provisions of the federal securities laws; (d) ordering Adams and MT Properties to disgorge his ill-gotten gains described herein, with prejudgment interest; and (e) ordering Adams and MT Properties to

2

pay a civil monetary penalty pursuant to Section 20(d) of the Securities Act [15

U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

## JURISDICTION AND VENUE

5.      The Commission brings this action pursuant to Sections 20(b) and

20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Section 21(d) the

Exchange Act [15 U.S.C. § 78u(d)].

6.      The Court has jurisdiction over this action pursuant to Sections 20(b),

20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and

Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e),

and 78aa].

7.      Adams and MT Properties, directly or indirectly, used the means or

instruments of interstate commerce, the mails, or the facilities of a national

securities exchange in connection with the acts described herein.

8.      Venue is proper under Section 22 of the Securities Act [15 U.S.C. §

77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1391

because a substantial part of the events or omissions giving rise to the claims made

herein occurred in the Southern District of Mississippi. In addition, Adams resides

in, and MT Properties has its principal place of business in, Madison MS, which is

within the Southern District.

## DEFENDANTS

9.     **Arthur Lamar Adams**, age 58, lives in Madison, Mississippi.  He is

the founder and president of MT Properties.

10.     **Madison Timber Properties, LLC** is a Mississippi limited liability

company that has its principal place of business in Madison, Mississippi.  It is

wholly-owned by Adams.

## STATEMENT OF FACTS

11.     MT Properties purports to be a timber harvesting company.

12.     Starting in at least 2004, Defendants began raising funds through the

sale of promissory note investments.  The sale of these promissory notes has

continued until April 19, 2018.

13.     In general, the promissory notes are for a one-year period and offer an

annual return of 12%-15%, which is paid back over the course of the year.  At the

end of the year, investors can either have their principle returned or rolled over into

a new investment.

14.     When soliciting investors, Defendants told investors that MT

Properties would use the funds to secure and harvest timber from specific tracts of

land that owned by third parties.  The tracts of land were usually located in

Alabama, Florida, or Mississippi.

15.     Defendants also told investors that they would generate the investment returns from the sale of the harvested timber. Finally, many investors were told that they had the sole rights to the specific land tracks, and that no one else would be able to harvest the timber on that land.

16.     The Proposed Defendants raised at least $85,000,000 through the sale of these securities to approximately 150 investors located primarily in the southeastern United States.

17.     As part of this "Timber Scheme" the Proposed Defendants provides the investor with a (1) promissory note; (2) timber deed and cutting agreement; (3) security agreement; (4) tract summary that includes the value of the timber on the property; and (5) a title search certificate.

18.     MT Properties never obtained the harvesting rights to the land as claimed. In most cases, Adams forged the timber deed and cutting agreements. Adams also forged the documents purportedly showing the value of the timber on the land tracks. Further, Adams would pledge the same land tracts (which he did not actually have the rights to) to multiple parties. Finally, in most cases, the specific land tracks did not have the value of timber as promised or did not in fact have any harvestable timber.

19.     Instead of using the investor funds generated by the Timber Scheme to acquire timber rights and harvest the timber, Adams used the funds for his own

5

benefit. Additionally, Adams began constructing real estate developments near Oxford and Starkville, Mississippi. Investors were not told about this real estate development and had no knowledge that their funds would be used support it. Further, the investors have no legal interest in the real estate developments.

20.     In addition, Defendants used funds from new investors to pay the returns owed to existing investors.

## COUNT I – FRAUD IN THE PURCHASE OR SALE OF SECURITIES

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
[15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5]**

21.     The Commission realleges and reincorporates paragraphs 1 through 20 as if fully set forth herein.

22.     Since approximately 2004, Defendants, in connection with the purchase or sale of securities, by use of means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly:

(a)     made untrue statements of material facts and omitted to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or

(b)     engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit.

6

23.    Defendants' misrepresentations, omissions, and acts, practices or courses of business which operated as a fraud or deceit were material.

24.    Defendants acted with scienter by knowingly or with severe recklessness making the above-referenced misrepresentations and omissions, and engaging in acts, practices or courses of business which operated as a fraud or deceit.

25.    By reason of the actions alleged herein, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT II –FRAUD IN THE OFFER OR SALE OF SECURITIES

### Violations of Section 17(a) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

26.    The Commission realleges and reincorporates paragraphs 1 through 20 as if fully set forth herein.

27.    Since approximately 2004, Defendants, directly or indirectly, in the offer or sale of securities, by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, employed a device, scheme or artifice to defraud.

28.    Defendants' misrepresentations, omissions, and acts, practices or courses of business which operated as a fraud or deceit were material.

29.     Defendants acted with scienter by knowingly or with severe recklessness making the above-referenced misrepresentations and omissions, and engaging in acts, practices or courses of business which operated as a fraud or deceit.  Defendants also acted negligently.

30.     By reason of the actions alleged herein, Defendants violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

(i) finding that Defendants violated the antifraud provisions of the federal securities laws as alleged herein;

(ii) permanently enjoining Defendants from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(iii) freezing defendants' assets, expediting discovery and preventing the destruction of documents pending resolution of this litigation

(iv) ordering Defendants to disgorge their ill-gotten gains and to pay prejudgment interest thereon;

(v) ordering Defendants to pay a civil monetary penalty pursuant to Section

20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange

Act [15 U.S.C. § 78u(d); and

(vi) granting such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the

Commission demands trial by jury in this action of all issues so triable.

Dated this 20th day of April, 2018.

Respectfully submitted,

s/ *W. Shawn Murnahan*
W. Shawn Murnahan
Senior Trial Counsel
Georgia Bar No. 529940
Tel: (404) 842-7669
Email: murnahanw@sec.gov

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Tel: (404) 842-7622
Email: loomism@sec.gov

Justin Delfino
Senior Counsel
Georgia Bar No. 570206
Tel: (404) 942-0698
Email: delfinoj@sec.gov

COUNSEL FOR PLAINTIFF

9

Securities and Exchange Commission
Atlanta Regional Office
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA  30326-1382
Tel (main): (404) 842-7600
Fax: (703) 813-9364

OF COUNSEL

D. Michael Hurst, Jr.
United States Attorney

*s/Kristi H. Johnson*
Kristi H. Johnson
Assistant United States Attorney
MS Bar No. 102891

Marc Perez
Assistant United States Attorney
WA Bar No. 33907

Civil Division
United States Attorney's Office
Southern District of Mississippi
501 East Court Street, Suite 4-430
Jackson, MS 39201
Tel: (601) 973-2887
Fax: (601) 965-4409

3:18-cv-252-DPJ-FKB

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

U.S. Securities and Exchange Commission
950 East Paces Ferry Road, N.E., Suite 900, Atlanta, GA 30324

## DEFENDANTS

ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES,

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Madison Co., MS
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
APR 20 2018
ARTHUR JOHNSTON
DEPUTY

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
W. Shawn Murnahan (ph: 404-842-7669), M. Graham Loomis
U.S. Securities and Exchange Commission
950 East Paces Ferry Road, N.E., Suite 900, Atlanta, GA 30324

Attorneys *(If Known)*
John M. Colette, 109 E. Capitol Street, Suite 475, Jackson, MS 39201
(601) 335-6277

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1    U.S. Government
Plaintiff

☐ 3    Federal Question
*(U.S. Government Not a Party)*

☐ 2    U.S. Government
Defendant

☐ 4    Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1    Original
Proceeding

☐ 2    Removed from
State Court

☐ 3    Remanded from
Appellate Court

☐ 4    Reinstated or
Reopened

☐ 5    Transferred from
Another District
*(specify)*

☐ 6    Multidistrict
Litigation -
Transfer

☐ 8    Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5

Brief description of cause:
Violations of the antifraud provisions of the federal securities laws

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

DATE
04/20/2018

SIGNATURE OF ATTORNEY OF RECORD
s/ W. Shawn Murnahan

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE



No. 3:18-CV-00252-CWR-FKB

SECURITIES & EXCHANGE COMMISSION,

*Plaintiff,*

*v.*

ARTHUR LAMAR ADAMS,
*et al.,*

*Defendants.*

ORDER APPOINTING RECEIVER

Before CARLTON W. REEVES, *District Judge.*

Defendants engaged in a multi-million dollar Ponzi scheme that defrauded hundreds of investors. This order appoints a receiver to manage Defendants' estates and describes the scope of receivership.

Thirty applicants submitted receivership applications to the Court. This pool of men and women was extremely impressive and unusually diverse. Applicants included lawyers

(ranging from solo practitioners to partners in law firms larger than any in Mississippi), accountants, academics, and other professionals from a dozen states across the country. Out-of-state applicants recognized the talents of Mississippi attorneys by proposing substantive alliances with them. The Secretary of State was right to support an open application process, without which many would never have had the opportunity to reveal their talents to this Court. Applicants offered compelling reasons for their appointment. The breadth and depth of their experiences made this Court's choice a difficult one.

The Court considered many factors when screening applications. A number of applicants lacked the appropriate professional experience for this case. Some with the right experience proposed hourly rates that were too high to justify, including rates of over $1,000 an hour. Others proposed to work with partner professionals less qualified than others in the pool. Occasionally, applicants or the firms they partnered with had, in practicing before this Court, demonstrated that they are unsuited to serve as a receiver.

Nearly all candidates, however, proposed laudable and bold steps to ensure that their recruitment and retention policies were inclusive. The Court was particularly impressed with members of the Mississippi bar who crossed long-established lines to forge entrepreneurial partnerships. The diversity of the applicant pool and the creativity of the respective proposals is worth noting.

Encouraging diversity in the judiciary is not a cure-all for the lack of that feature in the broader legal profession. Nor is encouraging diversity destined to result in true representation,

2

rather than tokenism masquerading as such. Nevertheless, in order to do justice, the judiciary must incorporate a wide array of experiences, facts, and perspectives into its decisionmaking processes – including the decisionmaking process of receivers, who act as extensions of the courts. When courts hire and appoint individuals to assist in their mission, they must ensure those opportunities are extended to all whom the judiciary serves. As this case proves, doing so enhances – rather than diminishes – the quality of the applicant pool.

Of all the candidate qualifications the Court took into account, perhaps the most important was the ability to exercise disinterested and informed judgment. This case involves what may be the largest Ponzi scheme in Mississippi's history, one in which many Mississippi residents and entities are entangled. Mississippi is a small state. The Receiver and her staff must be close enough to the state to understand its workings. But the Receiver must also be distant enough to preserve her impartiality, a key trait in a process that may involve clawing back funds from the connected and powerful. Many otherwise capable candidates were unequipped to navigate the real and apparent conflicts of interest their appointment would create.[1]

After weighing the applicants' professional experience, hourly rates, candor, judgment, and other qualifications, the Court believes that Alysson L. Mills, a member of the Mississippi bar and partner at the Louisiana firm of Fishman

---

[1] This should come as no surprise to the parties, given their discussion of a specific candidate's conflicts of interest at the hearing on this matter.

3

Haygood, LLP, is best suited to be Receiver. Mills is a graduate of the University of Mississippi School of Law, and clerked for Fifth Circuit Judge E. Grady Jolly. She has extensive federal court experience, including representation of bankruptcy trustees and securities purchasers in suits involving fraud and mismanagement. She has authored Supreme Court briefs and frequently argues in the Fifth Circuit.

Mills has proposed an experienced team of lawyers from Fishman Haygood to serve as her counsel, including individuals who have handled matters involving Ponzi schemes, complex bankruptcy disputes, and securities arbitration. Her team has represented individuals, companies, pension funds, hospitals, cities, and states. Firm partner Brent B. Barriere's experience makes him particularly qualified to serve as primary counsel to the Receiver. Most team members will bill at rates not to exceed $275 an hour, while two partners will bill at rates not to exceed $325 an hour.

The Court is satisfied that Mills has the experience, judgment, and talent to perform the duties and responsibilities of a receiver and act as an officer of the Court. Therefore, it is hereby ORDERED that Alysson L. Mills is appointed to serve without bond as Receiver for the estate of the Receivership Defendants, Arthur Lamar Adams and Madison Timber Properties, LLC. The Receiver shall take possession of the entirety of the Receivership Defendants' assets. The Receiver is authorized to retain the services of Fishman Haygood, LLP and other appropriate professionals. The scope of receivership is as follows.

4

# I

## General Powers & Duties of Receiver

The Receiver shall have all powers, authorities, rights, and privileges now possessed by the officers, managers, and interest holders of and relating to the Receivership Defendants, in addition to all powers and authority of a receiver at equity under all applicable state and federal law in accordance the provisions of 28 U.S.C. §§ 754, 959, and 1692, and Fed. R. Civ. P. 66, and shall assume and control the operation of the Receivership Defendants and shall pursue and preserve all of their claims.

No person holding or claiming any position of any sort with the Receivership Defendants shall possess any authority to act by or on behalf of the Receivership Defendants, with the exception that attorneys representing Defendant Adams in *U.S. v. Adams*, Case No. 3:18-CR-0088-CWR-LRA (S.D. Miss) may continue their representation.

The Receiver and her agents, acting within the scope of such agency as Retained Personnel, are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

The Receivership Defendants shall indemnify, defend, and hold harmless the Receiver and the Retained Personnel from and against all actions (pending or threatened and whether at law or in equity in any forum), liabilities, damages, losses, costs, and expenses, including but not limited to reasonable attorneys' and other professionals' fees, arising from conduct or omission of the Receiver and the Retained Personnel under the terms of this Order, except for any such conduct or omission adjudged by this Court to be the result of gross negligence or willful misconduct.

Subject to the specific provisions below, the Receiver shall have the following general powers and duties:

(1) to use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including but not limited to monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind and description, wherever located, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estate"), including, but not limited to, (i) the following bank accounts: First Bank of Clarksdale, Account No. 7315736, Southern Bancorp Account Nos. 6454774, 6454367, and 6454359, and River Hills Bank Account No. 6755060 and (ii) Defendant Adams' principal residence located at 134 Saint Andrews Drive, Jackson, Mississippi, 39211;

6

(2) to use reasonable efforts to determine the nature and location of the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers, telephones, personal digital devices and other informational resources, of whatever kind and description, wherever located, in possession of the Receivership Defendants, or issued by the Receivership Defendants and in possession of third parties ("Receivership Records");

(3) to take custody, control, and possession of all Receivership Property, Receivership Records, and any assets traceable to assets owned by the Receivership Estate; and, with prior approval of this Court upon ex parte request, institute such actions or proceedings to impose a constructive trust, to sue for and collect, recover, receive or take into possession from third parties all Receivership Property, Receivership Records, and any assets traceable to assets of the Receivership Estate;

(4) to manage, control, operate, and maintain the Receivership Estate and hold in her possession, custody, and control all Receivership Property, pending further Order of this Court;

(5) to open bank accounts for the Receivership Defendants;

(6) to use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or

7

advisable in the ordinary course of business in discharging her duties as Receiver;

(7) to take any action which, prior to the entry of this Order, could have been taken by the officers, managers, and agents of and relating to the Receivership Defendants; including the termination of any personnel that the Receiver deems appropriate;

(8) to terminate any and all leases of the Receivership Defendants' personal or real property, or to sell any of the Receivership Defendants' personal or real property;

(9) to access all of the Receivership Defendants' bank accounts, securities accounts, and IT systems;

(10) to collect any management or advisory fees due and owing to the Receivership Defendant;

(11) to produce Receivership Defendants' records and to share information as reasonably requested with the staff of the Commission without a subpoena;

(12) with this Court's approval, to engage and employ persons in her discretion to assist her in carrying out her duties and responsibilities hereunder, including but not limited to accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

(13) to take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

8

(14) to obtain, by presentation of this Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, assets, liabilities, or agents of and relating to the Receivership Estate or Receivership Defendants;

(15) without further order of this Court, to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

(16) to investigate and, following this Court's approval upon ex parte request, to bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver;

(17) following this Court's approval upon ex parte request, to file a petition in bankruptcy for either or both the Receivership Defendants if the Receiver determines it to be necessary; and

(18) to take such other action as may be approved by this Court.

## II

### Duty to File Recommendation & Report

Within 60 days, the Receiver shall file a report with the Court as to the status of the Receivership Estate. Such report shall include:

(1) a description of all known assets of the Receivership Estate, their location, and to the extent possible, the Receiver's good faith estimate of the value of those assets;

(2) a list of secured creditors and other financial institutions with an interest in the Receivership Estate;

(3) to the extent practicable, a list of investors in the securities sold by the Receivership Defendants;

(4) any other known liabilities of the Receivership Estate;

(5) the Receiver's preliminary plan for the administration of the Receivership Estate, including a recommendation regarding whether bankruptcy cases should be filed for all or a portion of the assets subject to the receivership, a recommendation as to the appropriateness of forfeiture proceedings for any assets subject to the receivership, and a recommendation as to whether litigation against third parties should be commenced on a contingent fee basis to recover assets for the benefit of the receivership;

(6) to the extent not provided in response to the prior subject matters, the Receiver's preliminary recommendation as to the most reasonable and efficient methods for recovery, liquidation, and distribution of the Receivership Estate;

(7) the Receiver's recommendation as to whether the receivership created by this Order should be continued and the benefits of any such action; and

(8) any additional information that the Receiver deems relevant.

Upon consideration of this report, the Court shall consider whether to terminate the receivership or order such other relief as it deems appropriate.

10

## III

### Injunction Against Interference with Receiver

The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

(1) interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

(2) hinder, obstruct, or otherwise interfere with the Receiver in the performance of her duties; such prohibited actions include but are not limited to concealing, destroying, or altering records or information;

(3) dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate the due date of any lease, loan, mortgage, indebtedness, security agreement, or other agreement

11

executed by any Receivership Defendant or which oth-
erwise affects any Receivership Property; or

(4) interfere with or harass the Receiver, or interfere in
any manner with the exclusive jurisdiction of this
Court over the Receivership Estate.

The Receivership Defendants and their past or present offic-
ers, managers, and agents and all persons in active concert or
participation with them, including any financial institution,
shall provide the Receiver immediate access to and control
and possession of Receivership Records and the Receivership
Estate's assets, including securities and property of any kind,
real and personal, as well as all keys, passwords, entry codes,
and the original of all books, records, documents, accounts,
computer printouts, disks, and the like.

The Receivership Defendants shall cooperate with and assist
the Receiver in the performance of her duties, including by
promptly acknowledging to third parties the Receiver's au-
thority to act on behalf of the Receivership Estate and by
providing such authorizations, signatures, releases, attesta-
tions, and access as the Receiver may reasonably request.

The Receiver shall promptly notify the Court and the Com-
mission of any failure or apparent failure of any person or en-
tity to comply in any way with the terms of this Order.

## IV

### Stay of Litigation

The following Ancillary Proceedings, excluding the instant
proceeding and all police or regulatory actions and actions of
the Commission related to the above-captioned enforcement
action, are stayed until further Order of this Court: all civil

legal proceedings of any nature, including but not limited to
bankruptcy proceedings, arbitration proceedings, foreclosure
actions, default proceedings, or other actions of any nature in-
volving:

(1) the Receiver, in her capacity as Receiver;

(2) any Receivership Property, wherever located;

(3) any of the Receivership Defendants, including sub-
sidiaries and partnerships; or

(4) any of the Receivership Defendants' or Receiver-
ship Estate's past or present officers, directors, manag-
ers, agents, or general or limited partners sued for, or
in connection with, any action taken by them while act-
ing in such capacity of any nature, whether as plaintiff,
defendant, third-party plaintiff, third-party defendant,
or otherwise.

The parties to any and all Ancillary Proceedings are enjoined
from commencing or continuing any such legal proceeding,
or from taking any action, in connection with any such pro-
ceeding, including but not limited to the issuance or employ-
ment of process.

All Ancillary Proceedings are stayed in their entirety, and all
Courts having any jurisdiction thereof are enjoined from tak-
ing or permitting any action until further Order of this Court.
Further, as to a cause of action accrued or accruing in favor of
one or more of the Receivership Defendants against a third
person or party, any applicable statute of limitation is tolled
during the period in which this injunction against commence-
ment of legal proceedings is in effect as to that cause of action.

These provisions bar any person or entity, other than the Receiver, from placing either of the Receivership Defendants in bankruptcy proceedings.

## V

### Receiver Compensation

The Receiver is to be paid her reasonable compensation and expense reimbursement from the Receivership Estate. Such compensation and expense reimbursement shall require the prior approval of this Court.

Within 30 days after the end of each full month while the Receivership is in effect, the Receiver shall apply to this Court for compensation and expense reimbursement from the Receivership Estate through Monthly Fee Applications. Monthly Fee Applications shall contain representations that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and (ii) with the exception of her Receivership application, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

Monthly Fee Applications will be interim and will be subject to cost-benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

Monthly Fee Applications may, in the Court's discretion, be subject to a holdback in the amount of 25% of the amount of

14

fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

At the close of the receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, as well as the Receiver's final application for compensation and expense reimbursement.

This Order supersedes prior orders of this Court only to the extent they conflict.

SO ORDERED, this the 22nd day of June, 2018.

s/ CARLTON W. REEVES
*United States District Judge*

15